**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **No. 4:23-cr-523** |
| | § | |
| **XU ZEWEI** | § | |

**XU ZEWEI'S MOTION TO QUASH THE SEARCH WARRANT FOR HIS CELL PHONE AND REQUEST FOR AN EVIDENTIARY HEARING**

Defendant Xu Zewei moves to quash the search warrant that the government obtained on November 10, 2026, to search the cell phone seized from his person when he was arrested at the request of the United States. The United States held the phone for 199 days without seeking a warrant, has never explained the delay, and applied only after Mr. Xu moved for the phone's return and put the government on notice that its delay violated the Fourth Amendment. Mr. Xu asks the Court to receive evidence at the November 19, 2026 hearing, quash the warrant, and order the phone returned to his counsel under Federal Rule of Criminal Procedure 41(g).

**Relevant Facts**

Italian authorities arrested Mr. Xu in Milan, Italy, on July 3, 2025, at the request of the United States. ECF No. 41 at 1; ECF No. 43 at 1. According to the government, Italian authorities seized his iPhone under Article XVIII of the extradition treaty between the United States and Italy "for surrender to the United States." ECF No. 43 at 1. On April 25, 2026, Italian authorities surrendered Mr. Xu for extradition, together with the iPhone. ECF No. 43 at 1. The government states that the phone was locked and powered off when the United States received it and has remained locked and powered off. *Id.* at 1–2. For over six months after the iPhone arrived to the United States, no warrant was issued for the seizure or search of the phone.

The first communication from the government to defense counsel about the phone occurred on September 30, 2026, when the government asked defense counsel whether Mr. Xu would provide the passcode. *Id.* at 2. Counsel declined, and Mr. Xu moved for the phone's return the next day. *Id.* In that motion, Mr. Xu asked to participate and be heard if the government made a belated attempt to obtain a warrant. ECF No. 41 at 2.

The government filed its opposition on October 9, 2026. *See* ECF No. 43. It argued that the phone was lawfully seized and that the United States "plans to seek a warrant to search it for evidence." *Id.* at 1–2. It offered no reason why it had not already done so. *See id.*

Mr. Xu replied on October 16, 2026. *See* ECF No. 44. The reply showed that the government had held the phone for at least 167 days without seeking judicial authorization, relied on *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), and *United States v. Chang*, No. 18-cr-681, 2024 WL 1308775 (E.D.N.Y. Mar. 27, 2024), and asked the Court to deny any belated application for a warrant. *Id.* at 1–3. The reply also requested an evidentiary hearing, including on any warrantless efforts by federal agents to access the phone. *Id.* at 1 n.1, 4.

At a status conference on November 13, 2026, the government advised the defense and the Court that it had obtained a warrant to search the phone and that the warrant is dated November 10, 2026. The Court orally ordered the government not to execute the warrant until after a further hearing, which the Court set for November 19, 2026, at 2:30 p.m. *See* ECF No. 50.

Defense counsel has not seen the warrant or the application. On November 13, 2026, at 2:45 p.m., counsel emailed government counsel S. Mark McIntyre, Craig Feazel, and Matthew Anzaldi to request copies of both. As of the date of this filing, the government has not responded. Mr. Xu is filing a separate motion asking the Court to unseal and order production of those materials.

Assuming the government applied for the warrant on the date it was issued, November 10, 2026, the government held Mr. Xu's phone in the United States for a total of 199 days before seeking judicial authorization to search it. That application came 41 days after the government first asked defense counsel for the passcode, 40 days after Mr. Xu moved for the return of the property, and 25 days after Mr. Xu's reply specifically cited the authority holding such delays unconstitutional.

## Legal Standard

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Place*, 462 U.S. 696, 700 (1983) (cleaned up). A cellphone "seized during an arrest can only be searched pursuant to a lawful search warrant." *United States v. Opoku*, 556 F. Supp. 3d 633, 639 (S.D. Tex. 2021) (citing *Riley v. California*, 573 U.S. 373, 403 (2014)).

The government may hold property while it seeks a warrant, but "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *Smith*, 967 F.3d at 205 (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)); *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (same). The reasonableness of a delay is determined "in light of all the facts and circumstances," on "a case-by-case basis." *Mitchell*, 565 F.3d at 1351 (quotation omitted). Courts weigh four factors: "(1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized item, and (4) the strength of the state's justification for the delay." *Smith*, 967 F.3d at 206.

Federal Rule of Criminal Procedure 41(g) provides that "[a] person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). "The court

must receive evidence on any factual issue necessary to decide the motion." *Id.* If the Court grants the motion, it "must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." *Id.*

## Argument

### I. The Court can decide now whether the government's delay bars the search.

#### A. The warrant requirement exists to prevent unreasonable searches, not merely to remedy them afterward.

The warrant requirement "protects property owners . . . by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police.'" *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (internal quotation omitted). It is "designed to prevent, not simply to redress, unlawful police action." *Steagald v. United States*, 451 U.S. 204, 215 (1981) (quotation omitted) (rejecting the government's argument that post-search suppression motions and damages actions adequately redress law enforcement Fourth Amendment abuses). For that reason, a judge asked to authorize a search must "determine whether any predicate illegality preclude[s] issuance of the warrant." *United States v. Ganias*, 824 F.3d 199, 223 (2d Cir. 2016) (en banc).

Applying that principle this year, a magistrate judge in the Eastern District of New York held that the *Smith* delay analysis "must be applied at the warrant application stage[.]" *In re Search Warrant for Two Cellular Phones*, 838 F. Supp. 3d 317, 321 (E.D.N.Y. 2026), *rev'd*, *In re Application for Search Warrant*, No. 26-MC-2965, 2026 WL 3117756 (E.D.N.Y. Oct. 9, 2026); *see also In re Application for Search Warrant*, 527 F. Supp. 3d 179 (D. Conn. 2020) (also applying *Smith* at the warrant application stage). Because the court had "sufficient information on which to determine whether the government's retention of the phones without an authorizing warrant now precludes the issuance of a new warrant," its "duty [was] to make that determination now, not to

leave it to a post-search suppression motion or damages action." *Id.* at 322–23. The magistrate judge denied the warrant because the government's 67-day delay was unreasonable. *Id.* at 325.

A district judge reversed that decision, but importantly, did not hold that *ex ante* review was improper. The district court instead assumed, without deciding, that *Smith* applies at the warrant application stage, and agreed that the 67-day delay was unreasonable. *In re Application for Search Warrant*, 2026 WL 3117756, at *3 & n.6. However, the 67-day delay in that case occurred only after the government had initially, promptly obtained a search warrant, allowed it to expire, and then waited an additional 67 days before seeking another. *See id.* at *1. The district court granted the application on good faith grounds only because an objectively reasonable officer in those circumstances would not have known in light of existing precedent that the delay in securing the second warrant violated the Fourth Amendment. *Id.* at *3. The court also cautioned that the government "is on notice of the possibility that a delay in seeking a search warrant might be found unreasonable under *Smith*, and the search warrant application could be denied." *Id.* at *4 n.8.

## II. The government's 199-day delay was unreasonable.

### A. The length of the delay weighs heavily for Mr. Xu.

Courts "give independent weight to the length of delay," and "a month-long delay well exceeds what is ordinarily reasonable." *Smith*, 967 F.3d at 207. The delay here was 199 days. That is more than six times the 31-day delay held unreasonable in *Smith*, *id.* at 202, more than four and a half times the 42-day delay that *Chang* called "presumptively unreasonable," 2024 WL 1308775, at *6, and nearly three times the 67-day delay found unreasonable by both the magistrate judge, *see Two Cellular Phones*, 838 F. Supp. 3d at 323–24, and the district judge, *see In re Application for Search Warrant*, 2026 WL 3117756, at *3, in the recent *ex ante United States v. Smith*

application discussed above. It is nearly six times the 34-day delay held unreasonable in *United States v. Tisdol*, 544 F. Supp. 3d 219, 227 (D. Conn. 2021) ("Here, the Government's complete lack of explanation for the month-long communication failure between two of the officers actively investigating matters pertaining to Defendant totally disregards the temporal limitations of the Fourth Amendment's reasonableness requirements[.]"), more than nine times the 21-day delay held unreasonable in *Mitchell*, 565 F.3d at 1353 ("No effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush. Under these circumstances, the twenty-one-day delay was unreasonable."), and nearly ten times the 20-day delay held unreasonable in *United States v. Uu*, 293 F. Supp. 3d 1209, 1217 (D. Haw. 2017) ("[T]he length of the delay with no corresponding explanation or reason for that delay resulted in a violation of the Fourth Amendment.").

*Chang* is especially instructive because it involved a phone seized by foreign authorities during an extradition arrest and later transferred to the FBI. 2024 WL 1308775, at *1–2, *6 n.11. The court held that "the clock for delay started to run" when "the FBI obtained the phone from South African personnel[,]" and that "it was at that point that the Government should have begun to act diligently in applying for a warrant to search the phone." *Id.* at *6. The government's duty of diligence here began no later than April 25, 2026, when it received Mr. Xu's phone. *See* ECF No. 43 at 1.

**B. A cell phone is the most important kind of personal property.**

This Court has recognized the extraordinary privacy interest in a cell phone. As this Court has observed, a cell phone often contains "a digital record of nearly every aspect of [our] lives." *Opoku*, 556 F. Supp. 3d at 639 (quoting *Riley*, 573 U.S. at 395). Consequently, a cell phone search "would typically expose to the government far *more* than the most exhaustive search of a house."

*Id.* (quoting *Riley*, 573 U.S. at 396–97). Accordingly, "the protections given to a cell phone must be at least equal to, if not greater than, the protections set out for houses." *United States v. Oglesby*, No. 4:18-CR-0626, 2019 WL 1877228, at *5 (S.D. Tex. Apr. 26, 2019) (cited at *Opoku*, 556 F. Supp. 3d at 639).

Other courts agree. The Eleventh Circuit has described a computer hard drive as "the digital equivalent of its owner's home, capable of holding a universe of private information." *Mitchell*, 565 F.3d at 1352 (quoting *Kansas v. Rupnick*, 125 P.3d 541, 552 (Kan. 2005)). In the delayed-search context, "seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests." *Smith*, 967 F.3d at 213. Phones are therefore "presumed to be of importance to their owners absent evidence to the contrary[.]" *Two Cellular Phones*, 838 F. Supp. 3d at 324. The government has offered no contrary evidence. This factor weighs heavily for Mr. Xu.

**C. No reduction in Mr. Xu's property interest excuses a 199-day delay.**

To the extent Mr. Xu's interest in his cell phone is reduced because he is detained (which we would argue it is not), even a diminished interest does not relieve the government of its duty. "[E]ven if a defendant has a diminished possessory interest in the seized item, the Fourth Amendment still obligates the United States to diligently obtain a warrant." *Uu*, 293 F. Supp. 3d at 1213–14 (quoting *United States v. Laist*, 702 F.3d 608, 616 (11th Cir. 2012) (cleaned up)). In *Uu*, the defendant's interest was diminished by his probation and his failure to seek the property's return, yet a 20-day unexplained delay still violated the Fourth Amendment. *Id.* at 1215–16.

At most, this factor is neutral.

**D. The government has offered no justification at all.**

The government has never explained the delay. Its opposition says only that the United States "plans to seek a warrant." *See* ECF No. 43 at 2. It identified no investigative activity, competing priority, or obstacle that prevented a prompt application. When the government neglects "to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Uu*, 293 F. Supp. 3d at 1213 (quoting *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012)). Even "the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence." *Smith*, 967 F.3d at 213. "[T]he Fourth Amendment imposes a time-sensitive duty to diligently apply for a search warrant if an item has been seized for that very purpose, and all the more so if the item has been warrantlessly seized." *Id.* at 210.

The instant record matches the cases in which courts found no justification. In *Mitchell*, "[n]o effort was made to obtain a warrant within a reasonable time because law enforcement officers simply believed that there was no rush." 565 F.3d at 1353. In *Tisdol*, the government "acknowledged that there was no explanation for the delay." 544 F. Supp. 3d at 227 (cleaned up). By contrast, *Chang* found no Fourth Amendment violation because the government submitted an agent's declaration describing specific investigative steps during the delay, and because the court found that two other factors favored the government. 2024 WL 1308775, at *9–10. The government here has offered nothing comparable. This factor weighs decisively for Mr. Xu.

**E. The balance of factors requires that the warrant be quashed.**

Three factors weigh for Mr. Xu, and the remaining factor is at most neutral.

## III. Good faith cannot save this warrant.

Good faith limits the exclusionary rule, a remedy applied after a search. Thus, it should not be applied at this juncture. However, even if the Court considers good faith, it does not apply on the facts of the instant case. *In re Application for Search Warrant*, the district court granted the warrant because "there was no way for the Government to know that *Smith* would be applied to its search warrant application." 2026 WL 3117756, at *3. In the instant case, the government did know.

On October 1, Mr. Xu asked to be heard on any belated warrant application. *See* ECF No. 41 at 2. On October 16, he cited *Smith* and *Chang* and asked the Court to deny any belated application because of the delay. *See* ECF No. 44 at 1–3. On October 9, *In re Application for Search Warrant* had warned that a delayed application "could be denied." 2026 WL 3117756, at *4 n.8. The Second Circuit announced its "clarified principles" to "guide law enforcement officers" six years ago. *Smith*, 967 F.3d at 213. Where the government "was aware of the applicable law but failed to apply it appropriately," the good-faith exception does not apply. *Tisdol*, 544 F. Supp. 3d at 228.

Good faith also does not apply when the issuing judge "was misled by information in an affidavit that the affiant knew or reasonably should have known was false." *Opoku*, 556 F. Supp. 3d at 639 (quoting *United States v. Beverly*, 943 F.3d 225, 232–33 (5th Cir. 2019)). "The good-faith exception will not apply if the warrant application is misleading." *Id.* at 640 (cleaned up). Reckless disregard "may be inferred from an affidavit omitting facts that are clearly critical to a finding of probable cause." *Id.* (quoting *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991)). In *Tisdol*, the court declined to apply the good faith exception after concluding that an affidavit that understated the delay "misled the magistrate judge[.]" 544 F. Supp. 3d at 228. Mr.

Xu does not know whether the affidavit here disclosed the 199-day delay, the pending Rule 41(g) motion and briefing, or defense counsel's request to participate in the warrant application process. Each fact is critical to whether the warrant could issue.

## Conclusion

The government held Mr. Xu's phone for 199 days without a warrant, never explained why, and applied only after Mr. Xu moved for the phone's return and cited the authority that condemns the delay. In light of the foregoing, this Court is requested to (1) receive evidence at the November 19, 2026 hearing; (2) quash the November 10, 2026 search warrant for Mr. Xu's cell phone; (3) order the government to return the phone to Mr. Xu's counsel under Rule 41(g), subject to reasonable conditions; and (4) continue its order barring execution of the warrant until the Court rules on this motion and Mr. Xu has had an opportunity to review the warrant and application and supplement this motion.

Respectfully submitted,

**COGDELL LAW FIRM, PLLC**

/s/ Dan Cogdell
Dan Cogdell
Texas Bar No. 04501500
dan@cogdell-law.com
Aisha Dennis
Texas Bar No. 24128655
aisha@cogdell-law.com
712 Main St., Suite 2400
Houston, Texas 77002
Office: (713) 426-2244
Facsimile: (713) 426-2255

**COUNSEL FOR DEFENDANT XU ZEWEI**

**CERTIFICATE OF CONFERENCE**

I certify that on November 13, 2026, at 2:45 p.m., counsel for Mr. Xu emailed Assistant United States Attorneys S. Mark McIntyre and Craig Feazel and National Security Division Deputy Chief Matthew Anzaldi to request the search warrant and warrant application for Mr. Xu's cell phone. As of the filing of this motion, the government has not responded. Based upon the government's opposition to Mr. Xu's oral motion to quash at the November 13th status conference, it is Mr. Xu's understanding that the United States is opposed to this motion.

/s/ Dan Cogdell
Dan Cogdell

**CERTIFICATE OF SERVICE**

I certify that on November 16, 2026, a copy of the foregoing motion was served by Notification of Electronic Filing on all counsel of record, namely Assistant United States Attorneys S. Mark McIntyre and Craig Feazel and National Security Division Attorney Matthew Anzaldi.

/s/ Dan Cogdell
Dan Cogdell